UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

THOMAS EDWARD KITTRELL,                   Civil File No. 05-2796 (DSD/FLN)

        Petitioner,

   v.                                     **REPORT AND RECOMMENDATION**

STUART VON WALD,

        Respondent.

---

Thomas Edward Kittrell, 1111 Highway 73, Moose Lake, Minnesota, 55767, Petitioner, pro se.

Kimberly Parker, Assistant Minnesota Attorney General, 445 Minnesota Street, Suite 1800, St. Paul, Minnesota, 55101-2134, for Respondent.

---

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's amended petition for a writ of habeas corpus, brought under 28 U.S.C. § 2254. (Docket No. 12.)[1]  Respondent has filed a return contending that the petition should be dismissed, (Docket Nos. 15-17), and Petitioner has filed a reply to the return, (Docket Nos. 19-20).

The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, it is recommended that the amended petition for writ of habeas corpus be denied, and that this action be dismissed with prejudice.

---

[1] It has previously been determined that Petitioner's original habeas corpus petition, (Docket No. 1), could not be entertained here, because it included certain claims for which Petitioner had not exhausted his state court remedies.  Petitioner was granted leave to file an amended petition that would not include any unexhausted claims, (see Report and Recommendation dated May 5, 2006, [Docket No. 11], and Order dated June 5, 2006, [Docket No. 13]), and thus it is Petitioner's amended petition, (Docket No. 12), that is now before the Court.

I.      BACKGROUND

On March 28, 1998, Petitioner sat in his pickup truck in a store parking lot, and watched two women leave their minivan and enter the store.  Petitioner then entered the back of the minivan, and stayed there until the women returned and started driving away. Before the minivan had left the parking lot, Petitioner revealed himself, and came after the women with an object in his hand.  The frightened women fled from the van before Petitioner was able to stop them, and then Petitioner left the van as well.  He was soon found, along with a hunting knife, in his truck in the parking lot.  Petitioner was arrested and charged with two counts of attempted kidnapping and two counts of second degree assault.

On July 30, 1998, Petitioner entered into a plea agreement, by which he agreed to plead guilty to two counts of second degree assault, and the State agreed to dismiss the two pending kidnapping charges.  (Petitioner's "Procedural History," [Docket No. 4], p. 1.) The following day, the prosecution informed Petitioner that the State would seek to have him sentenced as a "Patterned Sex Offender" under Minnesota law.  (Id.)

Minnesota's Patterned Sex Offender statute, Minn.Stat. § 609.108, is a sentence enhancement statute.  At the time of Petitioner's conviction, the statute provided that a criminal defendant who is convicted of certain enumerated "predatory crimes," including second degree assault, must be given a longer sentence, if the following circumstances are found:  (a) the defendant has previously been convicted of certain specified sex offenses, (b) "it reasonably appears to the court that the [current] crime was motivated by the offender's sexual impulses or was part of a predatory pattern of behavior that had criminal sexual conduct as its goal;" (c) "the court finds that the offender is a danger to public safety;" and (d) "the court finds that the offender needs long-term treatment or supervision

beyond the presumptive term of imprisonment and supervised release."   Minn.Stat. §

609.108, subd. 1.[2]

For more than a year, Petitioner contested the State's effort to have him sentenced

as a Patterned Sex Offender, and then he ultimately filed a motion to withdraw his guilty

plea.  (Id., pp. 1-3.)  That motion was granted on January 13, 2000.  (Id., p. 4.)

After further legal proceedings in the state district court, (id., pp. 4-5), Petitioner

finally entered into another plea agreement in July 2000.   As later described by the

Minnesota Court of Appeals –

> "He entered a plea agreement under which he pleaded guilty to both counts
> of second-degree assault in violation of Minn.Stat. § 609.222, subd. 1 (1998),
> in exchange for an aggregate sentence limited to 126 months and consisting
> of 84 months for one count and 42 months for the other, and the dismissal
> of the attempted-kidnapping charges. Kittrell also stipulated that the entire
> record, including his criminal history, would be submitted to the court for a
> determination of whether he is a patterned sex offender. He agreed not to
> offer evidence or argument on that issue and not to oppose a finding that he
> is a patterned sex offender."

State v. Kittrell, No. C9-01-2182, (Minn.App. 2002), 2002 WL 31500759 (unpublished

opinion) at *1, [hereafter "Kittrell I"].[3]

After considering Petitioner's prior criminal record and other evidence, the trial court

---

[2]  This statute has recently been replaced by Minn.Stat. § 609.3455.

[3]  The Court of Appeals quoted the plea agreement as stating –

"'Second, [Kittrell] will stipulate to the admission of the entire record of this
proceeding that exists prior to the withdrawal of his original plea.  He's not
required to admit that he is a patterned sex offender.  This is an issue that
will be determined by the Court based on the prior record.  [Kittrell] will not
submit any evidence on the issue nor argue.  [Kittrell] will not oppose such
a finding.'"

Kittrell I, 2002 WL 31500759 at *2.

judge concluded that Petitioner is a Patterned Sex Offender under Minnesota law, and he

was sentenced as such.[4]   Petitioner was sentenced to 84 months in prison for the first

assault conviction, and 42 months in prison for the second similar conviction, to be served

consecutively.  Neither of those sentences exceeded the statutory maximum for a second

degree assault conviction, which is 84 months.  Id. at *3, citing Minn.Stat. § 609.222, subd.

1, (1998).

The Patterned Sex Offender statute under which Petitioner was sentenced requires

---

[4]  As later explained by the Minnesota Court of Appeals –

"In its findings of fact, the district court noted Kittrell's nearly 15-year history of sex crimes, some of which involved the use of motor vehicles to confine his female victims and the use of physical force or a gun or a knife to coerce submission to sexual assaults.  All but one of the crimes involved forced sexual penetration.  Some of the crimes involved two female victims.  The court also noted two separate psychosexual assessments of Kittrell conducted by two different professionals.  The court found that each examiner concluded that Kittrell 'is a patterned sex offender who poses [a] high risk to commit future criminal sexual conduct offenses.'

Although Kittrell admitted that he entered the minivan, he denied that he did so with sexual intent or that he had a knife in his hand.  In his Goulette plea, he agreed that there was sufficient evidence from which a jury could find beyond a reasonable doubt that he in fact had a knife in his hand and that his conduct was motivated by sexual intent.  Kittrell's behavior in the Wal-Mart parking lot was strikingly similar in all material aspects to the pattern of conduct Kittrell engaged in during most of his prior sex crimes.

Thus, the record amply supports the court's conclusion that Kittrell's surreptitious entry of the minivan and his threatening gestures with a knife were motivated by his sexual impulses and fit a 'predatory pattern of behavior with the common objective of committing criminal sexual conduct or sexual assaults.'  There is neither evidence nor argument in the record that contradicts the court's finding or its conclusions."

Kittrell I, 2002 WL 31500759 at * 2.

that "after the offender has completed the sentence imposed... the commissioner of corrections shall place the offender on conditional release for the remainder of the statutory maximum period, or for ten years, whichever is longer." Id. at * 4, quoting Minn.Stat. § 609.108 (1998). Pursuant to this statutory requirement, Petitioner's sentence included a ten-year conditional release period. Because Petitioner was sentenced as a Patterned Sex Offender, he also was required to provide a DNA sample and register as a sex offender.[5]

Petitioner did not file a direct appeal following his conviction and sentence. However, in May 2001, which was approximately ten months after Petitioner was sentenced, he filed a pro se "motion to correct sentence," claiming that he should not have been sentenced as a Patterned Sex Offender. That motion was denied, and Petitioner then filed his first appeal.

The State initially argued that Petitioner's appeal should be dismissed, because it was filed too late. The Court of Appeals rejected that argument, and decided that although Petitioner could not appeal the judgment by which he was convicted and sentenced, (because it was far too late for that), he could seek appellate review of his more recent "motion to correct sentence." Thus, the Court of Appeals did consider Petitioner's challenges to "both the [trial] court's determination that he is a patterned sex offender and the sentence premised on that determination." Id. at *2.

One of the issues that the Court of Appeals specifically considered was whether

___

[5] At one point during a subsequent proceeding in Petitioner's case, the trial court inadvertently indicated that Petitioner had not been sentenced as a Patterned Sex Offender. The Minnesota Court of Appeals later confirmed that this was merely a "typographical error," as the record clearly shows that Petitioner was indeed sentenced as a Patterned Sex Offender. Kittrell I, 2002 WL 31500759 at * 3.

Petitioner's sentence was affected by the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Court of Appeals recognized that Petitioner's sentence implicated potential Apprendi issues, because Petitioner received an enhanced sentence based on factors that were determined by a judge, rather than a jury, based on a "preponderance of the evidence" standard rather than a "beyond a reasonable doubt" standard.  The Court concluded, however, that the trial court "did not violate Apprendi," because Petitioner's "aggregate sentence [of 126 months] is less than the aggregate statutory maximum sentence of 168 months and [thus] is not beyond the prescribed statutory maximum."  Kittrell I, 2002 WL 31500759 at *3.

Although the State Court of Appeals found the Petitioner's 126-month aggregate prison term did not contravene Apprendi, (because it did not exceed the statutory maximum), the Court concluded that "the addition of ten years conditional release would violate the plea agreement and Apprendi."  Id. at *4.  The Court determined that the conditional release term should be reduced to 42 months, and "made to run concurrently with the supervised-release term," and Petitioner's sentence was modified accordingly.  Id.

Both the State and Petitioner asked the Minnesota Supreme Court to review the Court of Appeals' decision in Kittrell I.  The Supreme Court granted the State's request, but denied Petitioner's request.  The case was later remanded to the Court of Appeals for further consideration of the conditional release issue in light of the intervening decision in State v. Jones, 659 N.W.2d 748 (Minn. 2003).[6]  On remand, the Court of Appeals concluded that Petitioner's conditional release term violated Apprendi, and that portion of

---

[6]  The various petitions, briefs and orders in the Minnesota Supreme Court proceedings are included in Respondent's First Appendix.  (Docket No. 8.)

his sentence was therefore vacated altogether.   State v. Kittrell, No. C9-01-2182 (Minn.App. 2003), 2003 WL 22289900 (unpublished opinion), [hereafter "Kittrell II"].  The Minnesota Supreme Court was not asked to review Kittrell II.

In December 2003, (which was approximately two months after Kittrell II was decided), Petitioner filed a post-conviction motion in the trial court. (Petitioner's "Procedural History," [Docket No. 4], p. 7.)  In that motion, he attempted to challenge his sentence (again) on several grounds.[7]  The post-conviction motion was summarily denied by a one-page order dated March 31, 2004.[8]  Petitioner filed another appeal, and the Minnesota Court of Appeals upheld the trial court's ruling.  The Minnesota Supreme Court denied Petitioner's request for further review on March 15, 2005.[9]

---

[7]  Petitioner's brief in support of his post-conviction motion purports to state four arguments: "[1] Should Petitioner be allowed to withdraw his guilty plea to the charge that he is a Patterned Sex Offender?  [2] Does the charge that Petitioner is a Patterned Sex Offender violate Petitioner's Constitutional rights, protecting him from double jeopardy and to be informed of the nature of the charges against him? [3] Should the Presentence Investigation Report and sentencing worksheets be corrected? [4] Should Petitioner's Criminal History Score be modified to comply with the Minnesota Sentencing Guidelines?" A copy of Petitioner's "Memorandum In Support Of Petition For Post-Conviction Relief" is included in Respondent's First Appendix, (Docket No. 8).

[8]  The trial court judge noted, (and this Court would agree), that "[i]t is difficult to determine what Petitioner is calling [for in] his petition/motion except to say he is asking for relief."  Because of the inscrutability of Petitioner's arguments, the judge did not try to address them specifically, but simply ruled that: "1. All of Petitioner's motions/requests for relief have [been] ruled upon by this Court or the Court of Appeals or by the Minnesota Supreme Court;" and "2. Any and/or all of Petitioner's motions/request for relief not ruled upon by this Court, or the Court of Appeals or the Minnesota Supreme Court are **denied**;" (emphasis in the original order).  A copy of the Order dated March 31, 2004, is included in Respondent's First Appendix, (Docket No. 8).

[9]  A copy of the Court of Appeals' unpublished two-page "Order Opinion," dated January 10, 2005, as well as the Supreme Court's order denying Petitioner's request for further review, are included in Respondent's First Appendix, (Docket No. 8).

Petitioner commenced the present action on December 5, 2005.  The amended

petition that is now before the Court, (see n. 1, supra), lists three claims for relief:

1.   That Petitioner was deprived of his Sixth Amendment right to have a jury

determine, based on a "beyond a reasonable doubt" standard, whether he met the statutory

conditions that would require him to be sentenced as a Patterned Sex Offender.

2.   That Petitioner's guilty plea was not entered freely and knowingly, because he

was not informed that he had a constitutional right to have a jury determine whether he

should be sentenced as a Patterned Sex Offender.

3.   That Petitioner's conviction and sentence violated the constitutional prohibition

against double jeopardy.[10]

For the reasons discussed below, the Court finds that Petitioner is not entitled to any

relief on any of his claims.

## II.   STANDARD OF REVIEW

Generally speaking, federal courts will not consider a habeas corpus claim

presented by a state prisoner, if the claim has not been properly raised, and decided on the

merits, in the state court system.  See McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997)

("before we may reach the merits of a habeas petition, we must first determine whether the

---

[10]   Petitioner's claims have been listed in the order they will be discussed below,
rather than the order in which they appear in the amended petition.  The first claim to be
discussed – that Petitioner had a right to a jury trial on his sentencing factors – is set forth
at "Ground Three" of the amended petition.  (In his "Memorandum Supporting Petition For
Habeas Corpus," (Docket No. 20), Petitioner breaks this claim for relief into two parts – (a)
that he was deprived of his right to have his sentencing factors determined beyond a
reasonable doubt, and (b) that he was deprived of his right to have those factors
determined by a jury.)  The second claim to be discussed – that Petitioner's plea was not
entered freely and knowingly – is Ground One of the amended petition.  The last claim
discussed below – the double jeopardy claim – is Ground Two of the amended petition.

petitioner has fairly presented his federal constitutional claims to the state court"). A habeas petitioner "must present his federal claims to the state courts in a timely or procedurally correct manner in order to provide the state courts an opportunity to decide the merits of those claims." Kennedy v. Delo; 959 F.2d 112, 115 (8th Cir.), cert. denied, 506 U.S. 857 (1992).

If a claim has not been raised in accordance with state procedural rules, and if the claim therefore has not been addressed, (and will not be addressed), on the merits in the highest available state court, then the claim is procedurally defaulted. "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Procedurally defaulted claims will not be addressed in a federal habeas corpus action, unless the prisoner-petitioner is able to show acceptable cause for his default, along with actual prejudice that will result from failing to consider the claim, or else new proof of actual innocence. Coleman v. Thompson, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

In this case, Respondent contends that none of Petitioner's current habeas corpus claims should be addressed on the merits, because all of his claims have been procedurally defaulted. The Court finds, however, that because of the unusual and convoluted procedural history of this case, it is not readily apparent which, (if any), of Petitioner's

current claims for relief were presented to the state courts in a procedurally acceptable fashion. It is clear, however, that none of Petitioner's claims for relief is actually meritorious.

"Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir.) (en banc), cert. denied, 528 U.S. 846 (1999). See also 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) ("[s]ince we find the issue can be easily resolved on the merits, we need not delve into all of [the petitioner's] excuses for his procedural default"), cert. denied, 531 U.S. 886 (2000); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir.) (confirming that procedural default is not a jurisdictional bar to review of a habeas claim, and addressing petitioner's apparently defaulted claim on the merits "in the interest of judicial economy"), cert. denied, 127 S.Ct. 583 (2006). Given the complexity of the procedural default issues in this case, and the obvious futility of Petitioner's substantive claims for relief, the Court will follow the Court of Appeals' advice, and will decide Petitioner's claims on the merits, despite the significant likelihood that some or all of those claims have been procedurally defaulted.

Reviewing Petitioner's current constitutional claims on the merits, however, is somewhat problematic. Ordinarily, those claims would have to be reviewed under the stringent standards prescribed by the Anti-Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), which requires great deference to the state courts' adjudication of a

claim.  See Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005) ("federal courts are

constrained by [AEDPA] to exercise only a 'limited and deferential review of underlying

state court decisions'"), cert. denied, 126 S.Ct. 1569 (2006).  Under AEDPA, "[a] federal

court may not grant a writ of habeas corpus unless the state court's adjudication of a claim

'resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law.'" Id., quoting 28 U.S.C. § 2254(d)(1).

The AEDPA standard of review cannot be readily applied here, however, because

the state courts never discussed Petitioner's current constitutional claims in any detail,

(which would seem to bolster Respondent's argument that the claims were procedurally

defaulted).  Petitioner's claims will therefore have to be reviewed under the less stringent

standards that were used before the enactment of AEDPA.  See Robinson v. Crist, 278

F.3d 862, 865 (8th Cir.2002) (where state prisoner's habeas claim "apparently was not

adjudicated by the Minnesota [state] court, we likely should apply the pre-AEDPA standard

of review"); Clemons v. Luebbers, 381 F.3d 744, 755 (8th Cir. 2004) (same).  But even

under the pre-AEDPA standard of review, i.e., without giving any special deference to the

underlying state court decisions, Petitioner's claims must be rejected on the merits.

III.    DISCUSSION

A.  Determination Of Patterned Sex Offender Status (Ground Three)

Petitioner contends that his constitutional rights were violated because he was

sentenced as a Patterned Sex Offender, based on factual determinations that were (a)

made by judge, rather than a jury, and (b) based on a "preponderance of the evidence"

standard, rather than a "beyond a reasonable doubt" standard.  The only arguable legal

support for this claim is the Supreme Court's decision in <u>Apprendi</u>.[11]  There the Court held that "[o]her than the fact of a prior conviction, any fact that increases the penalty for a crime <u>beyond the prescribed statutory maximum</u> must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. at 490 (emphasis added).

In this case, Petitioner was indeed sentenced based on factual determinations made solely by a judge, who presumably did not apply a "beyond a reasonable doubt" standard. However, Petitioner's sentence is <u>not</u> proscribed by <u>Apprendi</u>, because it did <u>not</u> exceed the statutory maximum.  As the Minnesota Court of Appeals found in <u>Kittrell I</u>, the statutory maximum sentence for each of Petitioner's second-degree assault convictions was 84 months, and Petitioner's actual sentence did not exceed that limit.  2002 WL 31500759 at *3.  Thus, the State Court of Appeals correctly concluded that Petitioner's sentence "did not violate <u>Apprendi</u>," because the "aggregate sentence is... not beyond the prescribed statutory maximum."  <u>Id</u>.

Because Petitioner's sentence did not exceed the statutory maximum, it was not constitutionally necessary to have the sentence enhancement factors of the Patterned Sex Offender statute decided by a jury, or proven beyond a reasonable doubt.   See <u>United States v. Aguayo-Delgado</u>, 220 F.3d 926, 933 (8th Cir.) (<u>Apprendi</u> applies only if there has been a nonjury sentencing finding that increased the sentence beyond the maximum authorized by reason of the conviction itself), <u>cert</u>. <u>denied</u>, 531 U.S. 1026 (2000).

---

[11]  Petitioner cannot rely on the Supreme Court's subsequent decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), because that case was not decided until after Petitioner's conviction became final on direct appeal, and the decision is not retroactively applicable on collateral review.  <u>United States v. Stoltz</u>, 149 Fed.Appx. 567, 568 (8th Cir. 2005) (<u>per</u> <u>curiam</u>) (unpublished opinion), <u>cert</u>. <u>denied</u>, 126 S.Ct. 1589 (2006); <u>United States v. Hernandez</u>, 436 F.3d 851, 855 (8th Cir.), <u>cert</u>. <u>denied</u>, 126 S.Ct. 2341 (2006).

Therefore, Petitioner's initial claim for relief, (listed as "Ground Three" in his amended petition), must be rejected on the merits.

     B.  Validity of Petitioner's Guilty Plea (Ground One)

Petitioner also claims that his guilty plea should be vacated, because it was "not made voluntarily with understanding of [Petitioner's] rights to have a jury review ALL charges." (Amended Petition, p. (5), ¶ 12.A. – "Ground One.") He specifically contends that his guilty plea is invalid, because he was not told that he had a right to have a jury decide, based on a "beyond a reasonable doubt" standard, any factual issues that could cause him to receive an enhanced sentence as a Patterned Sex Offender. (See Petitioner's "Memorandum Supporting Petition For Habeas Corpus," [Docket No. 20], p. 5.)

This claim fails because it is based on a false premise – i.e., that Petitioner actually did have a constitutional right to have a jury decide the factual issues apposite to his sentencing. In fact, no such right existed in this case.

As discussed above, Petitioner was <u>not</u> constitutionally entitled to a jury determination on the factual issues pertaining to his enhanced sentence as a Patterned Sex Offender, because the resolution of those issues did not cause him to be sentenced beyond the statutory maximum for the offenses to which he pleaded guilty. The constitutional rights discussed in <u>Apprendi</u> have no bearing here, because Petitioner's sentence did not exceed the statutory maximum. See <u>United States v. Vidrio</u>, 26 Fed.Appx. 565 569 (7th Cir. 2001) (unpublished opinion) ("[i]f the sentence does not exceed the statutory maximum penalty for a crime, the holding of <u>Apprendi</u> is not implicated"). Because Petitioner's sentence is not affected by <u>Apprendi</u>, there was no need for him to make a valid waiver of the rights discussed in that case. See <u>United States v. Parker</u>, 245

F.3d 974, 976-77 (7th Cir.) (defendant did not have to knowingly waive Apprendi rights, because his sentence did not exceed the statutory maximum), cert. denied, 534 U.S. 903 (2001).   Thus, Petitioner's "no valid waiver" claim, advanced at Ground One of the amended petition, must also be rejected on the merits.

     C.  Double Jeopardy (Ground Two)

Petitioner's final claim for relief, ("Ground Two" of the amended petition), is a double jeopardy claim.  This claim must be rejected, because it too is based on a false premise, namely, that the enhancement of Petitioner's sentence due to his Patterned Sex Offender status constitutes an additional criminal offense that is separate and distinct from the two second degree assault offenses to which he pleaded guilty.

Petitioner argues that the facts that must be established before a defendant can be sentenced as a Patterned Sex Offender are actually "elements" of a separate crime.  But that just is not true.  Minnesota's Patterned Sex Offender statute does not define or create a criminal offense; it is a sentence enhancement statute, which only comes into play if the defendant has already been convicted of at least one actual criminal offense.  See State v. Danforth, No. C5-98-2054, (Minn.App. 1999), 1999 WL 262143 (unpublished opinion) at *3 (the Patterned Sex Offender statute "is a sentencing provision that neither affects the charges filed in a criminal complaint nor adds any elements of a crime").  The Patterned Sex Offender statute is simply a recidivism law, much like a "three-strikes" law, which increases the criminal penalties for individuals, (such as Petitioner), who are repeat offenders.

It is true that "[t]he double jeopardy clause of the Fifth Amendment protects citizens

from 'multiple punishments for the same offense.'" United States v. Thomas, 895 F.2d 1198, 1201 (8th Cir. 1990), quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969). However, "[h]abitual offender statutes do not subject a defendant to a second conviction or punishment for prior offenses. Rather, the repeat offender's prior convictions are considered to be an aggravating factor that justifies imposing a heavier sentence for his or her present offense." Id. (citations omitted). Thus, "the constitutionality of imposing more severe sentences upon defendants who are habitual offenders has been repeatedly upheld against constitutional challenge, including challenges under the double jeopardy clause." Id. (citations omitted). See also United States v. Thomas, 930 F.2d 12, 14 (8th Cir. 1991) (application of sentence enhancement provision "does not violate the double jeopardy clause because a defendant is only being punished for one crime with the sentence being affected by the defendant's prior criminal history"). Our Court of Appeals has roundly "rejected the idea that the use of a defendant's prior convictions to enhance his sentence subjects him to a second conviction or punishment for the same offenses." United States v. Bates, 77 F.3d 1101, 1106 (8th Cir.), cert. denied, 519 U.S. 884 (1996).

The United States Supreme Court has also found that recidivism statutes, such as Minnesota's Patterned Sex Offender statute, do not violate the double jeopardy clause:

> "In repeatedly upholding such recidivism statutes, we have rejected double jeopardy challenges because the enhanced punishment imposed for the later offense 'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"

Witte v. United States, 515 U.S. 389, 400 (1995), quoting Gryger v. Burke, 334 U.S. 728,

732 (1948).[12]

Again, Petitioner was not "charged" or "convicted" for being a Patterned Sex Offender.  He was charged and convicted on two counts of second degree assault, and he was <u>sentenced</u> for those crimes under a sentence-enhancement statute, i.e., the Patterned Sex Offender statute.  Based on the case law cited above, the Court finds that the enhancement of Petitioner's sentence under the Patterned Sex Offender statute did not violate the double jeopardy clause of the federal Constitution.  Therefore, Petitioner's current double jeopardy claim must be denied on the merits.

## IV.    RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1.  Petitioner's amended petition for a writ of habeas corpus, (Docket No. 12), be **DENIED**; and

2.  This action be **DISMISSED WITH PREJUDICE**.

DATED: January 18, 2007

s/ *Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

---

[12] Petitioner also argues that there was a double jeopardy violation because he was "charged" with being a Patterned Sex Offender only after he had already been convicted of his assault crimes. (Petitioner's "Memorandum Supporting Petition For Habeas Corpus," [Docket No. 20], pp. 10-13.)  However, this argument is belied by Petitioner's own explanation of the record. According to Petitioner, he was "charged" with being a Patterned Sex Offender on July 31, 1998, which was nearly two years <u>before</u> he was finally convicted, on his final guilty plea, on July 11, 2000. (Petitioner's "Procedural History," [Docket No. 4], pp. 1 and 5.)  Thus, Petitioner cannot credibly contend that he was not notified about his potential sentence enhancement (as a Patterned Sex Offender) until after his guilty plea was finalized.

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **February 6, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.